**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MARKEL INSURANCE COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:24-00228-JB-B** |
| | ) | |
| **ATOZ TECH, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action is before the Court on Plaintiff, Markel Insurance Company's Motion for Summary Judgment ("Markel") (Doc. 31) and Defendant, ATOZ Tech, LLC's ("ATOZ") Motion for Summary Judgment (Doc. 36). The Motions address the same dispositive issue from the parties' respective opposing positions. Both Motions have been fully briefed (Docs. 32, 38, 39, 40, and 41) and the Court conducted a hearing at which the parties appeared and argued. Upon due consideration of all relevant filings and oral arguments of counsel, the Court concludes Defendant ATOZ's Motion is due to be GRANTED and Plaintiff Markel's Motion is due to be DENIED.

### I.     UNDISPUTED FACTS

The parties stipulate there are no genuine issues of material fact. The undisputed facts are as follows. Markel issued a commercial lines insurance policy to ATOZ. The Policy was issued to ATOZ in Georgia. The Policy provides coverage for "bodily injury," defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (*See* Doc. 33-1 at PageID.235). The Insuring Agreement states in pertinent part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; . . .

(*Id.* at PageID.223).

The Policy contains the following Abuse, Molestation, or Exploitation Exclusion ("Abuse

Exclusion"):

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability and Coverage B – Personal And Advertising Injury of the Coverage Form, and all insuring agreements added to the policy by

separate endorsement:

This insurance does not apply to:

**Abuse, Molestation, Or Exploitation**

Any liability, claim, "suit", damages, or injury of any type, including but not limited to, "bodily injury", "property damage", and "personal and advertising injury", arising out of or in any way related to abuse, molestation, or exploitation in any form, whether threatened or actual, including but not limited to physical or sexual abuse, molestation, or exploitation.

This exclusion applies to all claims, "suits", and causes of action, even if the claim, "suit", or cause of action against the insured alleges:

(1) Negligence or other wrongdoing in the employment, investigation, supervision, training, or retention of any person;

(2) Improper reporting to the proper authorities or failure to so report;

(3) Assault or battery;

(4) Intentional or negligent infliction of emotional distress, pain, or suffering;

(5) Defamation, libel, or slander;

(6) Professional malpractice or negligence of any kind;

(7) Corporal punishment; or

(8) Violations of any statute or ordinance.

However, if this policy includes an endorsement specifically adding an insuring agreement for abuse, molestation, or exploitation, this exclusion does not apply solely with respect to coverage for "bodily injury", "property damage", or "personal and advertising injury" provided by such abuse, molestation, or exploitation coverage endorsement.

All other terms and conditions remain unchanged.

(*Id.* at PageID.253).

On April 14, 2023, Margaret Lee, as Administrator of the Estate of Kadeejia Rajeen Lee, filed suit in Dallas County, Alabama for the death of Rajeen ("Underlying Suit").  The Underlying Suit alleges Rajeen was shot and killed while an invitee on premises owned and managed by Seoyon E-Hwa Interior Systems Alabama, LLC ("Seoyon").  The shooter is alleged to be a temporary employee of ATOZ, which provided staff to Seoyon.  The plaintiff in the Underlying Suit named ATOZ, asserting it was negligent or wanton in the following respects:

- failed to properly check the background of the shooter,
- permitted the shooter to return to the property after she had personal issues with Kadeejia,
- failed to employ appropriate precautions and safeguards to minimize the risk of foreseeable criminal activity by its temporary employees on the subject property,
- failed to have adequate rules, policies, procedures, and/or standards related to foreseeable criminal activity, including, but not limited to, specific standards associated with disclosure to its employees, disclosure to visitors to the subject property, appropriate assessment and risk analysis, training of security and management personnel, identification of potential safety risks, and/or taking action regarding the safety of employees and visitors to the subject property,
- hired, retained, and/or trained management and staff concerning the risks of interpersonal violent acts,
- failed to prevent Kadeejia's shooting, despite the prevalence of other prior criminal acts and/or threats by the assailant which made such shooting foreseeable, and/or
- was otherwise negligent or wanton in its provision of temporary workers to the subject property.

(Doc. 33-4).  The Underlying Suit alleges Kadeejia suffered serious bodily injuries and died as a result.  (*Id.*).  Markel is defending ATOZ in the Underlying Suit subject to a complete reservation of rights.

## II.    ANALYSIS

The Court has subject-matter jurisdiction of this action under 28 U.S.C. 1332, as there is complete diversity of citizenship between Markel and ATOZ.  The parties agree and the Court

concludes this action is governed by Georgia law because the Policy was issued to ATOZ in Georgia.

Markel's Complaint seeks a declaratory judgment that it does not owe insurance coverage to ATOZ for the claims asserted against ATOZ in the Underlying Suit. (Doc. 1). Specifically, Markel argues the Court should declare it does not have a duty to defend or indemnify ATOZ because the shooting constitutes "abuse" under the Policy Abuse Exclusion. (*Id.*).

Under Georgia law, the rules of construction applicable to contracts generally are applicable to insurance contracts. *C. Ingram. Co. v. Philadelphia Indem. Ins. Co.,* 694 S.E.2d 181, 184 (Ga. Ct. App. 2010). Contract construction and ambiguity are questions of law to be decided by the Court. *Id.* (quoting *McGregor v. Columbia Nat'l Ins. Co.*, 680 S.E.2d 559, 564 (Ga. Ct. App. 2009)). The legal question here is whether the term "abuse" in the Policy is ambiguous. In *C. Ingram. Co.*, the Georgia Court of Appeals stated, "[w]hen the language of an insurance policy defining the extent of the insurer's liability is unambiguous and capable of but one reasonable construction, the courts must expound the contract as made by the parties." 694 S.E.2d at 184 (quoting *Turner v. Gateway Ins. Co.*, 660 S.E.2d 484, 486 (Ga. Ct. App. 2008)). Under Georgia law, insurers "may fix the terms of its policies" and "insure against certain risks and exclude others." *Id.*

However, Georgia law also requires insurance policy exclusions, such as the instant Abuse Exclusion, to "be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford coverage." *Medmarc Cas. Ins. Co. v. Fellow Labriola, LLP,* 769 F. Supp. 1311, 1315 (N.D. Ga. 2025) (quoting *Ga. Farm Bureau Mut. Ins. Co. v. Meyers*, 548 S.E.2d 67, 69 (Ga. Ct. App. 2001)). "[W]here a term of a policy of insurance is susceptible to two or more

constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured."   *Id.*   Markel, as the insurer, "bears the burden of proving that an exclusion unambiguously excludes coverage."   *Markel Ins. Co. v. Bowen*, 2024 U.S. Dist. LEXIS 228379, *9 (N.D. Ga. Nov. 4, 2024).

The parties frame their respective arguments in the context these Georgia principles of insurance policy construction.  Markel describes the legal question as "whether the Policy's Abuse Exclusion applies to the allegations in the Underlying [Suit] to preclude coverage to AtoZ," and argues the answer is an "unequivocal 'yes.'"   (Doc. 32 at PageID.99).  Markel contends the allegations against ATOZ in the Underlying Suit are "unambiguous," and that the criminal shooting constitutes "physical abuse" for purposes of the Abuse Exclusion.  Relying primarily on *Markel Ins. Co. v. Bowen*, 2024 U.S. Dist. LEXIS 228379 (N.D. Ga. Nov. 4, 2024), Markel argues "abuse" is synonymous with "physical harm or damage, physically treating someone cruelly or roughly, physical violence, violent treatment, and bad or improper treatment."   (Doc. 32 at PageID.102).   With this, Markel suggests that the murder committed by ATOZ's temporary employee unambiguously constitutes "abuse."   It is clear, according to Markel, that "the common, everyday meaning of the word 'abuse' involves some type of physical injury or physical mistreatment." (*Id.* at PageID.105).

There are material distinctions between *Bowen* and this case.  The Court finds *Bowen* does not support Markel's argument that the term "abuse" is unambiguous, or that it "unequivocally" compels the application of the Policy Abuse Exclusion to the allegations of the Underlying Suit.  The issue in *Bowen* was whether "abuse" required intentional as opposed to

merely negligent conduct. Based on various dictionary definitions and Georgia statutes, the court concluded "abuse" did not require intent, such that the abuse exclusion provision in that case could be applicable in cases involving negligence.

In this case, there is no question that the conduct of ATOZ's temporary employee was intentional rather than negligent. The question here is whether Markel has satisfied its burden to demonstrate the term "abuse" is unambiguous and applies unambiguously to the subject intentional shooting. On this question, *Bowen* is helpful. In *Bowen,* a daycare worker broke a baby's leg while changing its diaper. The policy term "abuse" in *Bowen*, as in this case, was undefined. In its analysis of "abuse," the court in *Bowen* looked to "context and common sense" and found the daycare worker's injuring a baby in her care constituted "abuse." It was undisputed the daycare worker was frustrated with the baby, twisted and broke its leg, and went to prison for second-degree cruelty to children.

The court in *Bowen* did not specify what *"*context and common sense" compelled its decision. Markel suggests it was the mere infliction of physical harm, and that it was simply "common sense . . . that a volitional act of harming a baby would be 'abuse.'" (Doc. 40 at PageID.363). According to Markel, the instant case likewise involves obvious "physical abuse" because ATOZ's employee used "physical violence to inflict physical harm." (*Id.*). Markel insists, though, that the imbalanced power relationship between adult caregiver and baby in *Bowen* was not the "context" or "common sense" on which the court rested its opinion.

The Court disagrees. The obviousness of "abuse" in *Bowen* was precisely the context of the imbalanced relationship. As Markel itself states, it is simply "common sense . . . that a volitional act of harming a baby would be 'abuse'." However, the phrase "a baby" is what makes

the "abuse" obvious and "commons sense." In the instant case, the obviousness of "abuse" is absent. Whether a shooting of an adult constitutes "abuse" is not so clear. There is, at the least, a reasonable and logical construction of "abuse" that implies some imbalance of power or other factor in addition to mere physical injury. That may not be the only reasonable and logical construction of the term "abuse," but it is one. That is enough to constitute an ambiguity under Georgia law. *Medmarc Cas. Ins. Co.,* 769 F. Supp. 3d at 1315 ("[W]here a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured.")

*First Liberty Insurance Corporation v. Kelly*, a case applying Georgia law, is also instructive. 2013 WL 12067464 (N.D. Ga. Sept. 30, 2013). In *Kelly*, the court concluded the term "abuse" in a "physical abuse exclusion" was not synonymous with physical injury. The policy in *Kelly*, as in the instant case, did not define "abuse." The court rejected the insurer's argument that "physical abuse" was synonymous with physical injury, noting various Georgia rules of insurance contract construction. Under Georgia law, "the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean." 2013 WL 12067464, at *8. The court in *Kelly* also stated the Georgia principle that, "[e]xclusions to an insurance policy require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on the coverage in clear and explicit terms." *Id.* Based on these Georgia rules, the court reasoned that the broad construction of "abuse" proposed by the insurer would impair the policy coverage for "bodily injury."

The court in *Kelly* could not "find that a reasonable person in the insured's position would understand abuse to carry such a broad meaning." *Id.*

The Court also finds *Dorchester Mutual Insurance Company v. Krusel*, 485 Mass 431, 150 N.E.3d 731 (Mass. 2020) helpful. The underlying suit in *Krusel* involved an insured's adult son pushing and injuring another man.  The policy at issue in *Krusel* included an "abuse and molestation" exclusion for "[b]odily injury . . . arising out of sexual molestation, corporal punishment or physical or mental abuse."  150 N.E.3d. at 737-38.  Like the Policy in the instant case, the policy in *Krusel* did not define "physical abuse." *Id.* at 738.  The insurer argued "physical abuse" should be construed broadly to encompass "any form of physically harmful treatment." *Id.* at 737.  The court in *Krusel* disagreed.  It concluded the term "physical abuse" was ambiguous. In so concluding, the court applied a Massachusetts principle of insurance contract interpretation that tracks the Georgia principle applicable in the instant case.  "[A] term is ambiguous where 'it is susceptible of more than on meaning and reasonably intelligent persons would differ as to which meaning is the proper one.'"  *Citation Ins. Co. v. Gomez*, 426 Mass. 379, 381 (Mass. 1998). Based on dictionary definitions, the court in *Krusel* found the term "abuse" indicated "at least two plausible strands of interpretation."  485 Mass at 739.  The court found one "plausible strand" of interpreting "abuse" to imply a "qualitative aspect to the treatment beyond the fact that it causes harm." *Id.*  "In sum," the court concluded:

> [A]s evinced by the several dictionary definitions and the varying interpretations in different courts, there appears to be no judicial consensus as to whether abuse – here "physical abuse" -- connotes any conduct whatsoever that causes physical harm, or, instead, a subset of physically harmful conduct characterized by an "abusive" quality, such as an imbalance of power. In light of  these diverging interpretations, we conclude that the term "abuse" is susceptible of more than one meaning and reasonably intelligent persons could differ as to which meaning is the proper one. Hence, the term is ambiguous.

*Id.* at  439 – 440.[1] *See also, Riley v. Maison Orleans II*, 829 So. 2d 479, 491 (La. Ct. App. 2002) (finding "[p]hysical abuse, as opposed to simple assault, is generally the act of a person in control, dominance, or authority who misuses his position to harm or mistreat a person over whom he exercises such control. The act of one nursing home resident attacking a fellow resident is not abuse because the element of control is lacking.").

As set out above, the Court does not accept Markel's argument that the court in *Bowen* "found that the word 'abuse' is unambiguous as a matter of law." (Doc. 38 at PageID.346).  The court found the "context and common sense" of the particular facts in *Bowen* obviously constituted "abuse." The court's finding in *Bowen* is consistent with the plausible understanding of that term to imply an imbalance of power relationship, as expressed in *Krusel* and *Riley*, *supra*.

The Court concludes the term "abuse" in the instant Policy Abuse Exclusion is ambiguous. It is ambiguous as applied to the allegations of the Underlying Suit.  For the reasons set out above, the Court cannot find "abuse" to be synonymous with any physical injury or maltreatment. Neither can the Court agree with Markel's suggestion that "abuse" is not ambiguous in this case because the underlying claim is murder.  Obviously, it argues, intentional killing is "abuse." However, Markel's proposed limiting principle of intentional injury is undermined by the terms of its Policy Abuse Exclusion, which is itself not so limited.  By its terms, the Abuse Exclusion applies even if a claim against the insured alleges, *inter alia*, "negligent infliction of emotional distress, pain, or suffering." (Doc. 33-1 at PageID.253).

---

[1] Markel also relies on cases outside of Georgia in support of its position.  The Court does not find those cases as persuasive or applicable to the facts of this case as the opinions in *Kelly*, *Krusel*, or *Riley*, *supra*.

Markel's argument that the term "abuse" in the Policy Abuse Exclusion applies to the subject intentional killing is plausible.  However, Markel's argument that "abuse" applies unambiguously so is untenable.

**CONCLUSION**

For the reasons stated here, at oral argument, and those set out in briefing, Defendant ATOZ's Motion for Summary Judgment (Doc. 36) is **GRANTED** and Plaintiff Markel's Motion for Summary Judgment (Doc. 31) is **DENIED**.

**DONE and ORDERED** this 30th day of March, 2026.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE